(85 South. 280)

**HALLMAN v. BROCK.** (3 Div. 423.)

(Supreme Court of Alabama. Jan. 22, 1920.)

1. **Fraudulent conveyances** ⬠95(1)—**Deposit by partner to wife's credit held fraudulent gift.**

Deposit by partner to his wife's credit, without consideration, of the money received by him on a settlement of the partnership affairs, in which one of the partners fraudulently concealed the fact of there being other creditors, was a fraudulent gift of the firm's assets.

2. **Partnership** ⬠311(5)—**Settlement reopened for fraud, even as against innocent partner.**

Fraud of one of the partners in representing to the others that there were no creditors, except those paid, in reliance on which they settled its affairs, and distributed its assets, suffices to reopen the settlement, even as against an innocent partner.

⬠For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Partnership 311(5)—Settlement induced by copartner's representation of no creditors reopened.**

A partner, who was induced to enter into a settlement of its affairs and distribution of its assets among the partners on fraudulent representation of one of the other partners that there were no creditors, being the only one of the partners who was solvent, and having given a mortgage to prevent suit by creditors, is entitled to maintain suit to have a settlement and accounting and application to firm indebtedness of the distributed assets.

Appeal from Circuit Court, Escambia County; A. E. Gamble, Judge.

Suit by W. T. Brock against Mattie Hallman and others. From an adverse decree, the named defendant appeals. Affirmed.

Appellee filed this bill against the appellant, Mattie Hallman, and D. E. Ward, J. S. Hallman, D. C. Bradford, and the Bank of Atmore, alleging, in substance, as follows: In June, 1917, complainant, D. E. Ward, and J. S. Hallman formed a partnership for the purpose of engaging in a general mercantile business at Atmore, with equal interest as to profits and liabilities. The firm ceased to do business within a year after it was organized, and all the goods and merchandise of the partnership were sold; that although it ceased to do business, the affairs of the partnership have never been settled, and there are accounts of said partnership, consisting of debts due divers and sundry parties, still outstanding. That complainant and respondent Hallman were men of limited education, and respondent Ward—upon whom complainant relied for the correct keeping of the books—acted as bookkeeper for the firm, and had entire charge of the books. At the time of the sale of the stock of goods, respondent Ward presented a list of the creditors of said firm, showing the amount due each, and represented that the books and this list were correct and that said list showed the entire amount due each person by the firm. The proceeds of the sale were then used to pay the creditor as shown by this list, and the remainder divided between said three partners, each receiving $750. That in making the sale, and in the division of the remainder, complainant relied upon the representations and statements of said Ward, which it later developed were false and fraudulent, and made with the intent to deceive and with knowledge on his part of their falsity. That the books kept by Ward did not show to whom the firm was indebted, and that the amounts shown by the list of creditors were, in most instances, incorrect, and that said list did not contain all the creditors. That the books were fraudulently kept, false entries made, and a great number of the creditors of the firm were not shown by the books. It also

developed that the firm owed an additional amount of about $3,000. That the creditors of the firm had placed their claims in the hands of an attorney for collection, who was preparing to institute suit against complainant for said indebtedness; and in order to prevent the suit and to save costs and litigation complainant executed a mortgage on his individual property to secure the payment of said indebtedness, the value of said property embraced in said mortgage being in excess of the amount of said indebtedness. Complainant did not know of said additional indebtedness until long after the sale of the stock of goods, and after Ward and Hallman had received their share of the assets remaining. (A list of such creditors together with the amount due each appears in the bill.) That respondent Hallman received the sum of $750, and deposited the same in the Bank of Atmore to the credit of his wife, Mattie Hallman, which sum was the identical money received by J. S. Hallman from the proceeds of the sale of the stock of goods, and is now on deposit in said bank to the credit of Mattie Hallman, which sum they are preparing to withdraw from said bank; and, further, that said deposit was made by J. S. Hallman for the purpose of hindering, delaying, and defrauding the creditors of said firm and your complainant. That no consideration passed from said Mattie Hallman to J. S. Hallman for said money; and, further, respondent Ward used the funds of the partnership in the purchase of an automobile in his name, and has sold the same to respondent Bradford, who owed him $500 as balance due thereon, and garnishment is sought against said Bradford. That Ward and J. S. Hallman are each insolvent and injunction is sought against the Bank of Atmore to reach the assets belonging to the firm there on deposit in the name of Mattie Hallman.

Complainant offers to refund the $750 received by him from the sale of the stock of goods, and offers to do equity, and submits himself to the jurisdiction of the court.

The prayer of the bill seeks a reference to state an account between the parties, showing the amount due and owing by the firm, and what portion of the same should be paid by each member thereof; and that the affairs of the firm be wound up and settled. There is also prayer for writ of injunction to be issued against the bank, and for writ of garnishment to be issued against respondent, as well as prayer for general relief.

Demurrers were filed to the bill by Mattie Hallman on the grounds there is no equity in the bill as amended; there is no equity in the bill as against said respondent; the bill shows there has been a final settlement of the partnership affairs, and that J. S. Hallman has been guilty of no fraud, and that

if there has been fraud it was against the creditors, of which complainant cannot complain; that the bill did not have equity as one for contribution, for it was not shown complainant had paid the creditors, but had only given a mortgage to secure the same; and, further, there could be no decree for dissolution, because there had been a dissolution of the firm, and sufficient facts were not shown why the same should be set aside and reopened.

The court rendered a decree overruling these demurrers, from which the respondent Mattie Hallman prosecutes this appeal.

Emmett S. Thigpen, of Brewton, for appellant.

On the demurrers to the bill, counsel cites the following cases: 117 Ala. 583, 23 South. 145; 132 Ala. 208, 31 South. 355; 102 Ala. 220, 14 South. 640; 120 Ala. 479, 24 South. 940; 119 Ala. 186, 24 South. 506; 192 Ala. 287, 68 South. 369, Ann. Cas. 1916D, 815; 167 Ala. 461, 52 South. 402; 198 Ala. 499, 73 South. 817; 69 Ala. 543.

Hamilton & Page, of Evergreen, for appellee.

A settlement of a partnership may be opened for fraud or mistake. 132 Ala. 211, 31 South. 355; 127 Ala. 191, 28 South. 677; Rowley on Partnership, 922, 924. A partner may go into equity for the purpose of an accounting. 121 Ala. 425, 25 South. 918. Also for contribution. 192 Ala. 287, 68 South. 369, Ann. Cas. 1916D, 815.

GARDNER, J. (after stating the facts as above). The bill shows the existence of a mercantile partnership between complainant and respondents Ward and Hallman and a dissolution thereof, and seeks to bring said partners to an accounting and have certain assets of the firm received by them applied to the payment of the partnership debts. The bill also shows the sale of the stock of goods—the proceeds thereof being applied (as complainant believed) first to the payment of the firm's debts, and the remainder divided equally between the partners, each receiving $750.

The respondent Ward was bookkeeper of the firm, and the one upon whom the other two members relied as to questions of the firm's indebtedness. The averments of the bill show a gross fraud perpetrated upon the other members of the firm by respondent Ward falsely, and with the intention to deceive, representing that the list of creditors which he exhibited was correct as to number and amount due each, and that such list represented the entire indebtedness, when it subsequently developed that the firm owed an additional sum of $3,000, to speak in round numbers.

[1] The $750 received by Hallman was deposited in the respondent Bank of Atmore to the credit of appellant, the wife of J. S. Hallman, without consideration from her, and therefore constituted a fraudulent gift of the firm's assets, as alleged in the bill.

[2] The insistence that the bill shows a dissolution and final settlement of the partnership affairs, and no facts authorizing a reopening of the same, is without merit. If what was done by the partners is held to have been considered by the parties at the time a final settlement of the partnership affairs, yet there can be no question that the alleged fraud of respondent Ward entirely suffices to reopen the settlement, for, as said in Paulling v. Creagh, 54 Ala. 646:

"When fraud or undue advantage distinctly appears, affecting the whole account, the settlement will be annulled in toto, and the parties remitted to an accounting as if it had not been made."

See, also, Scheuer v. Berringer, 102 Ala. 216, 14 South. 640; Burks v. Parker, 192 Ala. 250, 68 South. 271. Under the averments of the bill, therefore, the amount received by respondent Hallman was the result of fraud, and in equity this sum is a part of the assets of the partnership, and as such subject to distribution among the creditors. While Hallman himself may have been innocent and as ignorant of the fraud as was complainant, yet he received the fund which was a result of the fraud, and, having parted with no consideration, cannot be permitted to receive the benefit thereof. The principle here involved is well expressed in the following quotation found in Law v. Grant, 37 Wis. 548:

"This case is brought within the broad principle, that no one can avail himself of fraud. * * * Where once a fraud has been committed, not only is the person who has committed the fraud precluded from deriving any benefit from it, but every other person is so likewise, unless there has been some consideration moving from himself. Where there has been consideration moving from a third person, and he was ignorant of the fraud, there such third person stands in the ordinary condition of a purchaser without notice; but where there has been no consideration moving from himself, a third person, however innocent, can derive no sort of benefit or advantage from the transaction."

So, here, J. S. Hallman can derive no advantage from this fraud, nor can his wife, the appellant, from whom no consideration passed.

[3] It is further suggested that if there was fraud, it was of such character as only the creditors could complain, and therefore complainant here could not maintain this bill. The bill shows the utter insolvency of respondents J. S. Hallman and D. E. Ward. The complainant was individually liable for the entire indebtedness of the firm, and could

be made to respond. In order to prevent a suit he executed a mortgage upon his own property. It would seem entirely clear, therefore, that this complainant was greatly interested in having a partnership settlement wherein an accounting may be had among the partners for the assets which they wrongfully received, so that said assets may be applied to the firm's indebtedness, and complainant relieved to this extent of the burden of the entire debt which he was wrongfully forced to assume. This contention is therefore untenable.

The bill is not one primarily for contribution, but its equity rests upon the right of complainant as a member of the firm to have a settlement of the affairs of the partnership, and an accounting of the assets and a proper distribution thereof for the payment of the debts.

The bill as amended was not subject to any demurrer interposed thereto, and the decree of the court below will accordingly be affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and BROWN, JJ., concur.

⚮For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes